**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**ANTHONY AMAKER, et al.,**

                              **Plaintiffs,**

            **-v-**                                                          **09-CV-0396A(Sr)**

**COMM. G.S. GOORD, et al.,**

                              **Defendants.**

_____

## REPORT, RECOMMENDATION AND ORDER

            This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #23.  It is currently assigned to the Hon. Lawrence J. Vilardo.

Dkt. #78.


            Currently before the Court are defendants' motions to dismiss or, in the

alternative, for a more definitive statement.  Dkt. ##41,58 & 68.  For the following

reasons, it is recommended that defendants' motions be granted in part and denied in

part.


**Statute of Limitations**

            By letter dated October 2, 2008, Anthony Amaker informed the _Pro Se_

Office Clerk in the Southern District of New York that:

            I respectfully submit this pro se family class action again to
            the court for filing and a docket number.  I am the lead

> plaintiff, currently incarcerated, and my family located in
> veries [sic] locations outside of the state of New York, and in
> New York.
>
> I was told by my mother's lawyer, [sic] that he tried to file this
> complaint, and it was rejected.  The reasons given was that
> the signatures were not the original.  I have received it two
> days ago.  I have checked it, and it did appear that my
> signature was a copy.  Therefore, I have resigned it and I am
> submitting it back to the court for filing, it was originally
> received on July 3, 2007.
>
> I do not want the statute of limitation affecting this complaint,
> and I will need to amend it in the future.
>
> In the interim, I respectfully await you to contact me at
> anytime there is a question or problem with this submission,
> hereinafter.

Dkt. #7-2, p.15. The signature page of the complaint is dated May 25, 2006.  Dkt. #7-2,

p.14.   The complaint contains two stamps from the Southern District of New York's *Pro*

*Se* Office - one is dated received on July 3, 2007; the other is dated received on

October 7, 2008.  Dkt. #7-2, p.1.


> By Order filed in the Southern District of New York on February 23, 2009,

the Hon. Leonard B. Sand directed

> the Clerk of the Court to assign a docket number to the
> complaint solely for the purpose of this order.  The Court
> further direct [sic] plaintiffs to submit a complaint with
> original signatures, separate Request to Proceed *In Forma*
> *Pauperis* ("IFP") applications, and a Prisoner Authorization
> form for each plaintiff who is currently incarcerated, within 30
> days of the instant order as detailed below.

Dkt. #7-3, p.1. Judge Sand explained the basis for his Order as follows:

> The instant complaint was submitted to the Court without the
> original signature of each plaintiff.  Furthermore, plaintiffs
> failed to submit separate IFP applications and a Prisoner

> Authorization form for each plaintiff who is presently
> incarcerated.  Rule 11(a) of the Federal Rules of Civil
> Procedure provides that "[e]very pleading, written motion,
> and other paper shall be signed by at least one attorney of
> record in the attorney's individual name, or, if the party is not
> represented by an attorney, shall be signed by the party."
> Therefore, plaintiffs are each directed to sign the attached
> complaint and return it to the Court's *Pro Se* Office within 30
> days of the date of this order.  If plaintiffs fail to return the
> complaint with original signatures within the time specified,
> the complaint will be dismissed.

Dkt. #7-3, pp.1-2.  In accordance with the Order, the complaint bears a filed date stamp

of February 23, 2009.  Dkt. #7-2, p.1.

> By Transfer Order dated April 23, 2009, Judge Sand recounted that

> The Court received the instant complaint on October 7,
> 2008.  At the time the complaint was submitted, it already
> had a stamped date of July 3, 2007, from a *Pro Se* Office.
> Plaintiff Anthony Amaker alleges in a letter he submitted with
> the complaint, that he had previously attempted to submit
> the complaint through his mother's lawyer, but it had been
> returned to him for lack of original signatures.  The Court
> has no record of having previously received the instant
> complaint on July 7, 2007.

Dkt. #7-7, p.1 n.1. Judge Sand then advised that

> On March 13, 2009, the Court received from plaintiff
> Anthony Amaker an IFP application and a Prisoner
> Authorization form. He also submitted a letter requesting
> additional time to obtain signatures of family members in
> compliance with the Court's order.  The Court memo-
> endorsed the letter, granting plaintiff Anthony Amaker until
> April 8, 2009 to comply.  On April 8, 2009, the Court
> received from plaintiff Anthony Amaker, a copy of the last
> page of the complaint with some original signatures
> (attached hereto).  He did not submit separate IFP
> applications for each plaintiff named or Prisoner
> Authorization forms for each plaintiff presently incarcerated.

Dkt. #7-7, pp.1-2.  Despite these omissions, Judge Sand directed the Clerk of the Court

to file and docket the complaint without payment of fees.  Dkt. #7-7, pp.2-3.  Because the allegations of the complaint arose at the Attica Correctional Facility ("Attica"), and Southport Correctional Facility ("Southport"), Judge Sand directed that the complaint be transferred to the Western District of New York.  Dkt. #7-7.

By Order entered June 4, 2009, the Hon. William Skretny noted that only plaintiff Anthony Amaker had submitted an IFP Application and granted plaintiff Anthony Amaker permission to proceed in *forma pauperis*.  Dkt. #12.  Judge Skretny afforded the remaining plaintiffs one last opportunity to submit an IFP Application.  Dkt. #12.

By Order entered January 5, 2010, the Hon. Richard J. Arcara granted permission to proceed *in forma pauperis* to plaintiffs Grace Amaker, Phyllis Amaker, Batise Amaker and Booker Amaker; dismissed the complaint as to plaintiffs Shaheem Amaker, Shaniev AH Amaker, Deloris Amaker and Lissette Amaker; and directed the plaintiffs to file an amended complaint clarifying their factual allegations.  Dkt. #17. Specifically, plaintiffs were directed to specify the personal involvement of each defendant in alleged constitutional violations.  Dkt. #17, pp.11-12.  The amended complaint was filed on February 17, 2011.  Dkt. #29.

Defendants argue that October 2, 2008, the date of Anthony Amaker's letter to the *Pro Se* Office Clerk in the Southern District of New York, is the earliest date that Anthony Amaker's complaint could have been delivered to prison officials for

mailing, rendering untimely any claim which accrued prior to October 2, 2005.  Dkt. #41-1, p.13.  As to the plaintiffs who were not incarcerated, defendants seek to use the date of the filing of the complaint, *to wit*, February 23, 2009, to render untimely any claims arising before February 23, 2006.  Dkt. #41-1, p.14.

Anthony Amaker responds that the initial complaint was presented to the Clerk's Office in the Southern District of New York on July 3, 2007.  Dkt. #73, pp.8-9.

Rule 11 of the Federal Rules of Civil Procedure provides that

> Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented.

However, Rule 5(d) of the Federal Rules of Civil Procedure provides that the Clerk of the Court "must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice."

Rule 11 further provides that "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."  As set forth in the Advisory Committee Notes to the 1993 Amendments to Rule 11:

> Retained in this subdivision are the provisions requiring signatures on pleadings, written motions and other papers. Unsigned papers are to be received by the Clerk, but then are to be stricken if the omission of the signature is not corrected promptly after being called to the attention of the attorney or pro se litigant.

In the instant case, the complaint is clearly stamped Received by the *Pro Se* Office on July 3, 2007.  Dkt. #7-2, p.1.  Accepting plaintiff's proffer that his mother's lawyer attempted to file it on this date, but the Court rejected it for lack of original signatures, such a rejection was error and should not bar claims which would have been timely as of July 3, 2007. *See Rodriguez v. City of New York*, No. 10 Civ. 1849, 2011 WL 4344057, at *2-3 (S.D.N.Y. Sept. 7, 2011) (complaint delivered to Court without a proper signature deemed filed on date of delivery rather than date signature was provided); *Krieger v. American Express Financial Advisors*, No. 98-CV-782, 2000 WL 207119 at *3 (W.D.N.Y. Feb. 16, 2000) (complaint stamped received by Clerk's Office on last day of statute of limitations deemed timely even though complaint was not filed until original signature was  provided 5 days later).  Accordingly, the Court will accept as timely any claims brought pursuant to 42 U.S.C. § 1983 which accrued as of July 3, 2004.  *See Owens v. Okure*, 488 U.S. 235, 250-51 (1989) (statute of limitations for claims asserted in New York under 42 U.S.C. § 1983 is three years).  As the earliest allegation in the amended complaint is dated October 6, 2004, it is recommended that the motion to dismiss on statute of limitations grounds be denied.

**Dismissal Standard**

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The Court remains obligated to construe a *pro se* complaint liberally and to interpret *pro se* pleadings to raise the strongest arguments that they suggest. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).


42 U.S.C. § 1983

42 U.S.C. § 1983 provides, in relevant part, that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"By its terms . . . the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Thus, the first inquiry in any § 1983 suit is whether plaintiff's federally protected rights have been violated. *Russell v. Coughlin*, 910 F.2d 75, 77 (2d Cir. 1990), *citing Martinez v. California*, 444 U.S. 277, 284 (1980).


It is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d

-7-

Cir. 1989).  Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring.  *Colon*, 58 F.3d at 873.  "There is no *respondeat superior* liability in § 1983 cases."  *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). Thus, supervisory officials may not be held liable merely because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

### Discrimination in Program Assignments

Anthony Amaker filed a complaint with the Department of Labor alleging that Great Meadow Correctional Facility ("Great Meadow"), Superintendent Greene condoned discrimination against blacks seeking Labor Department Certificates and only allowed white prisoners access to the Inmate Program Associate ("IPA"), program.  Dkt. #29, ¶ ¶ 6 & 29.

Although New York does not afford inmates a constitutionally protected liberty interest in work assignments, *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987), prisoners "are protected against invidious racial discrimination by the Equal Protection Clause of the Fourteenth Amendment." *Overton v. Bazzetta*, 539 U.S. 126, 138 (2003);

*See Richard v. Fischer*, 38 F. Supp.3d 340, 354 (W.D.N.Y. 2014) ("Although a prison inmate 'has no right to any particular prison job, . . . prison officials cannot discriminate against him on the basis of his race in work assignments."). Thus, Anthony Amaker's allegations are sufficient to state an Equal Protection claim against Superintendent Greene. *See LaBounty v. Adler*, 933 F.2d 121 (2d Cir. 1991) (allegations that similarly-situated white inmates were given work assignments without having to complete any 90-day educational program, while plaintiff, who is black, was required to complete the program, combined with allegation that all persons assigned as electricians are non-black and have been for the past ten years, sufficient to state plausible equal protection claim.).

### Use of Excessive Force at Great Meadow

On October 6, 2004, while incarcerated at Great Meadow, Anthony Amaker alleges that CO Rando, CO Huffer, CO Vaugh and Sergeant Hendry subjected him to excessive force while restraining him following an altercation with another inmate. Dkt. #29, ¶ 6. These allegations are sufficient to state a plausible claim of excessive force against CO Rando, CO Huffer, CO Vaugh and Sergeant Hendry.

### Retaliatory Misbehavior Report

Anthony Amaker alleges that CO Rando, CO Huffer, CO Vaugh and Sergeant Hendry issued a false misbehavior report in retaliation for the filing of the aforementioned claim with the United States Department of Labor and a "pending lawsuit and Ms. Grace D. Amaker assisting in preparing copies for serving summons

and complaints in a pending lawsuit," resulting in his transfer to Southport. Dkt. #29,

¶¶ 6-8.

Although "a prison inmate has no general constitutional right to be free

from being falsely accused in a misbehavior report," the issuance of a false misbehavior

report in retaliation for exercising a constitutional right is actionable under 42 U.S.C.

§ 1983. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *See Gayle v. Gonyea*,

313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false

disciplinary charges in retaliation for the exercise of a constitutionally protected right,

such as the filing of a grievance, states a claim under § 1983."); *Colon v. Coughlin*, 58

F.3d 865, 872 (2d Cir. 1995) (filing of lawsuit constitutes protected activity); *Smith v.

Greene*, No. 06-CV-505, 2008 WL 794978, at *4 (N.D.N.Y. March 24, 2008) ("There is

no dispute that [plaintiff's] complaint to the Inspector General's office was protected

activity."). Similarly, although a "prisoner has no liberty interest in remaining at a

particular correctional facility . . . prison authorities may not transfer an inmate in

retaliation for the exercise of constitutionally protected rights." *Davis v. Kelly*, 160 F.3d

917, 920 (2d Cir. 1998).

"Courts properly approach prisoner retaliation claims with skepticism and

particular care because virtually any adverse action taken against a prisoner by a prison

official – even those otherwise not rising to the level of a constitutional violation – can

be characterized as a constitutionally proscribed retaliatory act." *Davis v. Goord*, 320

F.3d 346, 352 (2d Cir. 2003) (internal quotation omitted). Thus, in order to survive a

-10-

motion to dismiss, a plaintiff asserting First Amendment retaliation claims must plausibly allege: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action. *Id.* at 352. To plausibly allege causation, plaintiff must allege facts suggesting that the protected conduct was a substantial or motivating factor in the prison official's determination to take action against him. *Burton v. Lynch*, 664 F. Supp.2d 349, 367 (2d Cir. 2009). Circumstantial facts indicating retaliatory motive include: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) an inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation. *Id., quoting Baskerville v. Blot*, 224 F. Supp.2d 723, 732-33 (S.D.N.Y. 2002). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Anthony Amaker fails to provide any facts to suggest a causal connection between his complaint to the Department of Labor and the issuance of the misbehavior report regarding the October 6, 2004 incident which allegedly caused his transfer. There is no allegation as to the date his complaint was made or any evidence to suggest that any of the defendants named in this cause of action had reason to know of plaintiff's complaint to the Department of Labor. Similarly, plaintiff's allegation that the false charges were issued in retaliation for a pending lawsuit fails to identify the lawsuit, when it was filed, who it was filed against, or otherwise provide any basis to believe that

the defendants named in this cause of action were aware of its existence.  Furthermore, Anthony Amaker fails to identify who was responsible for his transfer to Southport or allege that such defendant possessed any knowledge of his protected activity so as to plausibly allege causation.  As a result, it is recommend that Anthony Amaker's retaliation claim be dismissed.

### False Charges

Anthony Amaker alleges that although CO Rogoza never reported being attacked by Anthony Amaker, he failed to prevent his colleagues from filing false charges against Anthony Amaker. Dkt. #29, ¶ 6.

"[A] prisoner has no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie*, 105 F.3d at 862.  As a result, allegations that CO Rogoza failed to prevent his colleagues from filing "trumped up" charges fail to allege CO Rogoza's personal involvement in a constitutional violation. Accordingly, it is recommended that CO Rogoza be dismissed from this lawsuit.

### Assistance in Defending Against Disciplinary Charges

Anthony Amaker alleges that CO Harder was assigned to provide Anthony Amaker assistance in preparing for the disciplinary hearing, but failed to do so.  Dkt. #29, ¶ 8.  Specifically, CO Harder failed to interview CO Rogoza and inmate witnesses to the incident.  Dkt. #29, ¶ 26.

Although New York regulations call for inmates to be provided with assistance in preparing for disciplinary hearings, such regulations do not create a federally protected due process entitlement. *Ramsey v. Goord*, 661 F. Supp.2d 370, 391-92 (W.D.N.Y. 2009); *See Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004) (the only process due an inmate is that minimal process guaranteed by the Constitution as outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Accordingly, it is recommended that CO Harder be dismissed from this lawsuit.

## Due Process at Disciplinary Hearing

The amended complaint alleges that Superintendent Greene assigned CHO Harvey to conduct the disciplinary hearing and that CHO Harvey denied Anthony Amaker due process during the course of the disciplinary hearing. Dkt. #29, ¶¶ 8-11. Although not clearly articulated, the amended complaint suggests that CHO Harvey failed to consider evidence that CO Rogoza never reported being attacked by Anthony Amaker. Dkt. #29, ¶¶ 9-11 & 26. Director of Special Housing/Inmate Grievance Programs ("Director"), Selsky denied Anthony Amaker's appeal of the sentence, causing Anthony Amaker to serve 379 days in the Special Housing Unit ("SHU"). Dkt. #29, ¶¶ 11 & 26. These allegations are sufficient to state a plausible denial of due process claim against CHO Harvey and Director Selsky.

## Restrictions on Incoming Mail

In 2004, grievances were filed against Great Meadow Superintendent Greene for blocking photocopies of legal documents coming through the mail package

room.  Dkt. #29, ¶ 13.  Grace Amaker, a resident of New Jersey, assisted Anthony

Amaker in preparing copies of summons and complaints for Anthony Amaker to serve

in a pending lawsuit, but unnamed individuals "attempted to stop her rights to

association and communication with the plaintiff by withholding legal work product

coming through the mail and other documents needed in the case."  Dkt. #29, ¶ 7.


During a ten month period beginning in February of 2005, Southport

Senior Mail Room Supervisor Washburn, acting under the authority of Superintendent

McGinnis, Deputy Superintendent Bartlett, and Deputy Superintendent McNamara, in

violation of state regulations, restricted Anthony Amaker's receipt of legal documents

relating to a state court proceeding from Grace and Phyllis Amaker.  Dkt. #29, ¶¶ 13 &

15.  Ms. Washburn is also alleged to have denied Grace Amaker, Booker Amaker and

Phyllis Amaker's rights to send Jehovah's Witnesses' magazines to Anthony Amaker

through the mail.  Dkt. #29, ¶¶ 16 & 33. Commissioner Goord, Deputy Commissioner

LeClaire and Deputy Commissioner Annucci[1] subsequently changed the regulations to

prevent Grace and Phyllis Amaker from sending legal documents and religious

materials to plaintiff through the mail.  Dkt. #29, ¶¶  13 & 25.  Plaintiffs also generally

allege that staff at Southport tampered with mail sent to Anthony Amaker by Phyllis

Amaker, Grace Amaker, Booker Amaker, and Batise Amaker.  Dkt. #29, ¶ 23.


"Under the First Amendment, prisoners have a right to the free flow of

---

[1] Although Deputy Commissioner Annucci is not listed in the caption of plaintiff's
amended complaint and was not served with a summons and complaint, the allegations
contained within plaintiff's amended complaint are addressed in the interest of efficiency.

incoming and outgoing mail." *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006).

However, the right of a prisoner to receive and send mail may be regulated. *Id.* Such

regulations are valid if they are "reasonably related to legitimate penological interests,"

and are not an "exaggerated response to prison concerns." *Turner v. Safley*, 482 U.S.

78, 90-91 (1987). "In balancing the competing interests implicated in restrictions on

prison mail, courts have consistently afforded greater protection to legal mail than to

non-legal mail." *Johnson*, 445 F.3d at  534.


        Given the Court's inability on a motion to dismiss to consider the rationale

for denying delivery of Jehovah's Witnesses' magazines and legal documents and

photocopies of legal work product from Batise, Booker, Grace and Phyllis Amaker, it is

recommended that Anthony Amaker's claim of interference with incoming mail proceed

against Superintendent Greene and Ms. Washburn.  However, the allegation that

Superintendent McGinnis, Deputy Superintendent Bartlett and Deputy McNamara

"authorized" Ms. Washburn to violate DOCS' regulations regarding delivery of such

documents to inmates *via* mail is vague and conclusory, warranting dismissal.  In

addition, allegations that Commissioner Goord, Deputy Commissioner LeClaire and

Deputy Commissioner Annucci amended regulations regarding incoming

correspondence fail to state a plausible constitutional violation. To the extent that

Anthony Amaker challenges the constitutionality of the amended regulation, however, it

is recommended that such a claim proceed against Commissioner Goord in his official

capacity.

**Denial of Religious Meals**

Plaintiff alleges that he was denied food to break the fast during Ramadan on three occasions during his transfer from Great Meadow to Southport in November of 2004 and on eight occasions during his transfer from Southport to Attica in October of 2005.  Dkt. #29, ¶ 11.  However, isolated incidents involving the denial of religiously mandated food are insufficient to support a First Amendment claim.  *Washington v. Afify*, 968 F. Supp.2d 532, 538-39 (W.D.N.Y. 2013) (incidents that are isolated, or few in number, involving a denial of a religiously-mandated food, do not give rise to a First Amendment claim).  Therefore, it is recommended that this cause of action be dismissed.

**Use of Excessive Force at Southport**

On November 13, 2004, following his complaint that the denial of meals violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), Anthony Amaker was subjected to excessive force by CO Gilbert, CO Ayers and CO Pierson.  Dkt. #29, ¶ 11. Despite the lack of detail regarding this incident, it is recommended that a claim of excessive force be allowed to proceed against CO Gilbert, CO Ayers and CO Pierson.

**Investigation**

Deputy Superintendent Chappius conducted an investigation in response to Anthony Amaker's grievance regarding the November 13, 2004 incident and

condoned "the action of these officers and violation of not feeding the plaintiff during the fast." Dkt. #29, ¶ 11.

"Notwithstanding the First Amendment's guarantee of the right to petition the government for redress, 'inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable [Section] 1983 claim.'" *Alvarado v. Westchester County*, 22 F. Supp.3d 208, 214 (S.D.N.Y. 2014), *quoting Shell v. Brzezniak*, 365 F. Supp.2d 362, 369-70 (W.D.N.Y.2005); *See Banks v. Annucci*, 48 F. Supp.3d 394, 414 (N.D.N.Y. Sept. 30, 2014) ("The law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials."), *citing Bernstein v. New York*, 591 F. Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Rosales v. Kikendall*, 677 F. Supp.2d 643, 649 (W.D.N.Y. 2010) (fact that a prison official concluded that plaintiff had not been retaliated against by other officers did not amount to a constitutional violation by that investigating official). As a result, it is recommended that Anthony Amaker's allegations regarding Deputy Superintendent Chappius' investigation into plaintiff's grievance regarding the assault on November 13, 2004 be dismissed.

### Denial of Adequate Medical Care

As a result of the use of force incident at Great Meadow on October 6, 2004, Anthony Amaker suffered a perforated right ear drum. Dkt. #29, ¶ 6. However, his complaints of ongoing ear pain were ignored by Nurse Brandt at Southport. Dkt.

#29, ¶ 12.  Anthony Amaker alleges that his ear was not examined until November 29, 2004, at which time medical staff sent plaintiff to an Ear, Nose and Throat specialist who recommended treatment that he never received.  Dkt. #29, ¶ 12.  Nurse Brandt also ignored plaintiff's need for glasses and failed to report his complaints of pain and suffering in the medical record.  Dkt. #29, ¶ 24.  These allegations are sufficient to state a plausible claim of denial of adequate medical care against Nurse Brandt.

Although Dr. Wright was listed in the caption of the original complaint (Dkt. #7-1), he is not listed in the caption of the amended complaint, nor are there any allegations set forth against him in the amended complaint. In a declaration in opposition to the motion to dismiss, Anthony Amaker states that the delay in medical treatment regarding his ruptured ear drum "is solely the responsible area of concern for Dr. Wright as Chief Medical Officer."  Dkt. #72, pp.3-4.  As plaintiff's allegation of *respondeat superior* is insufficient to plausibly allege Dr. Wright's involvement in the alleged denial of adequate medical care to plaintiff, it is recommended that this purported claim be dismissed.

**Telephone Access**

In an attempt to prevent him from obtaining assistance from his family members regarding his medical treatment, Correction Counselor Mootz removed family members from Anthony Amaker's phone list.  Dkt. #29, ¶¶  13.  Attica Program Committee Chair Whiteford subsequently refused to reinstate the telephone numbers removed from Anthony Amaker's contact list.  Dkt. #29, ¶¶ 16-17.  In response to his

grievance, Attica Superintendent Conway assigned CO Zimmerman and Sgt. Gavigan to conduct a hearing, but refused to consider documents supporting Anthony Amaker's claim.  Dkt. #29, ¶ 17.

"Phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world . . . ." *Henry v. Davis*, No. 10 Civ. 7575, 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011) (collecting cases); *See Toliver v. Dep't of Corr.*, No. 10 Civ. 6298, 2012 WL 4510635, at * 9 (S.D.N.Y. April 10, 2012) (limit of one phone call per day fails to allege deprivation of a constitutional right).  As it is clear from the totality of the allegations in the complaint that Anthony Amaker maintained contact with his family despite the alleged restrictions on his telephone calls, it is recommended that Anthony Amaker's telephone restriction allegations against  J. Mootz; Program Committee Chair Whiteford; CO Zimmerman and Sergeant Gavigan be dismissed.

**Threats**

Anthony Amaker alleges that Sgt. Gavigan and CO Zimmerman threatened him with physical force for filing the grievance regarding his telephone contacts and speaking at the hearing.  Dkt. #29, ¶ 18.

Allegations of verbal abuse and threats unaccompanied by physical injury do not suffice to state a claim of constitutional violations under 42 U.S.C. § 1983. *Hudson v. Lockhart*, 554 F. Supp.2d 494, 497 (S.D.N.Y. 2008); *See Jermosen v.*

-19-

*Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) (Verbal threats of abuse are

insufficient to state a constitutional violation cognizable under 42 U.S.C. § 1983).  Thus,

it is recommended that Sergeant Gavigan and CO Zimmerman be dismissed from this

lawsuit.


### Mechanical Restraints

In February of 2005, Southport Superintendent McGinnis and Deputy

Superintendent Chappius "had" CO Dhier, CO Seymore and CO Parribella "make"

Anthony Amaker carry 6 draft bags of legal and personal property between cells up and

down stairs while in full restraints, even though "the facility staff knew the plaintiff

suffered from herniated discs in the lower back," causing nerve damage to plaintiff's left

arm.  Dkt. #29, ¶ 23.


The Eighth Amendment, which applies to the states through the Due

Process Clause of the Fourteenth Amendment, protects prisoners from cruel and

unusual punishment by prison officials.  U.S. Const. Amend. VIII; *Wilson v. Seiter*, 501

U.S. 294, 297-98 (1991).  To prevail on an Eighth Amendment claim, an inmate must

satisfy both an objective and subjective element.  Objectively, the inmate must

demonstrate that the conduct is sufficiently serious or harmful enough to reach

constitutional dimensions. *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir. 1993), *citing*

*Wilson*, 501 U.S. at 298.  Subjectively, an inmate must show that defendants acted with

"deliberate indifference" to his health or safety.  *Trammell v. Keane*, 338 F.3d 155, 162-

63 (2d Cir. 2003).  Generally speaking, "[a] prison official does not act in a deliberately

indifferent manner unless that official 'knows of and disregards an excessive risk to inmate safety.'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). That is, "the official must be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

When the prison conditions complained of are the result of disciplinary sanctions, the "deliberate indifference standard must be applied in a way that accounts for the precise circumstances of the alleged misconduct and the competing institutional concerns." *Trammell*, 338 F.3d at 163. Put another way, the court must determine whether the deprivation order "was reasonably calculated to restore prison discipline and security and, in that . . . context, whether the officials were deliberately indifferent to [plaintiff's] health and safety." *Id.* Restraints on an inmate do not violate the Eighth Amendment unless they are "totally without penological justification," "grossly disproportionate," or "involve the unnecessary and wanton infliction of pain." *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984), *quoting Rhodes v. Chapman*, 452 U.S. 337, 346 (1980).

As an objective matter, the Court finds that requiring an inmate encumbered by mechanical restraints to carry his personal property between cells fails to approach the level of a constitutional violation. In addition, plaintiff proffers no facts from which it could be inferred that the prison officials involved in plaintiff's cell transfer were aware of a substantial risk of personal injury to plaintiff as a result of him carrying

his personal property between cells while encumbered by mechanical restraints.  *See Goodwin v. Hungerford*, No. 12-CV-362, 2014 WL 1219050, at * (W.D.N.Y. Mar. 24, 2014) (complaint failed to allege sufficient facts to satisfy the subjective element of an Eighth Amendment claim where there were no allegations to suggest that prison officials were aware of an unreasonable risk to plaintiff's health or safety arising from their order that plaintiff walk down stairs while in full mechanical restraints, which plaintiff alleged aggravated his degenerative disc disease and knee pain, causing him to fall).  As a result, it is recommended that plaintiff's Eighth Amendment claim against CO Dhier, CO Symore, CO Parrabella, Superintendent McGinnis and Deputy Superintendent Chappius be dismissed.

### Denial of Access to the Courts

Between June and October of 2005, Southport Deputy Superintendent Bartlett and Deputy Superintendent McNamara denied Anthony Amaker's request to serve the New York State Attorney General by certified return receipt mail, as required to obtain jurisdiction over New York in the Court of Claims, causing the claim to be dismissed for improper service.  Dkt. #29, ¶¶ 15 & 25.

"A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure."  *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986).  To state a claim for denial of access to the courts, a plaintiff must allege facts plausibly suggesting that: (1) the defendant acted

deliberately and maliciously, and (2) the plaintiff suffered an actual injury," such as the dismissal of an otherwise meritorious legal claim. *Lewis v. Casey*, 518 U.S. 343, 353 (1996) . Anthony Amaker's allegation that he was unable to obtain jurisdiction in the Court of Claims due to Deputy Superintendent Bartlett and Deputy Superintendent McNamara's denial of his request to send documents certified mail, return receipt requested, is sufficient to state a claim of denial of access to the courts.

### Interference with Grievances

Between July and October 17, 2005, Anthony Amaker alleges that Superintendent McGinnis, Deputy Superintendent Bartlett and Deputy Superintendent McNamara allowed the Inmate Grievance Resolution Committee ("IGRC"), Supervisor to interfere with plaintiff's grievances. Dkt. #29, ¶ 15.

"Notwithstanding the First Amendment's guarantee of the right to petition the government for redress, 'inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures [do] not give rise to a cognizable [Section] 1983 claim.'" *Alvarado v. Westchester County*, 22 F. Supp.2d 208, 214 (S.D.N.Y. 2014), *quoting Shell v. Brzezniak*, 365 F. Supp.2d 362, 369-70 (W.D.N.Y. 2005). Accordingly, it is recommended that Anthony Amaker's allegations that Superintendent McGinnis, Deputy Superintendent Bartlett and Deputy Superintendent McNamara allowed the IGRC supervisor to interfere with the grievance proceeding and not file his grievance (Dkt. #29, ¶ 15), be dismissed with prejudice.

**Retaliatory Transfer**

Anthony Amaker alleges that Central Office defendants transferred him to Attica in October of 2005 to intimidate him from pursuing judicial matters pending in court and keep Ms. Grace Amaker, Phyllis Amaker, Batise Amaker, and Booker Amaker from assisting Anthony Amaker in his legal endeavors.  Dkt. #29, ¶ 14.

"A prisoner has no liberty interest in remaining at a particular correctional facility, but prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights."  *Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998).   In the instant case, however, Anthony Amaker's allegations of retaliation are vague and conclusory, failing to identify any particular defendant with personal involvement in the decision to transfer or to allege any facts to plausibly suggest that the unidentified defendants were aware of Anthony Amaker's pursuit of unidentified judicial matters. Accordingly, it is recommended that this claim be dismissed.

**Denial of Program**

Anthony Amaker alleges that in October of 2005, Program Committee Chair Whiteford "acted in a discriminatory fashion in the assignment of [his] program." Dkt. #29, ¶ 16.  More specifically, it is alleged that Program Committee Chair Whiteford "does not allow program assignment to anyone coming out of SHU for six months and dislikes certain religious denominations.  Dkt. #29. ¶ 16.

"It is well settled that 'in New York a prisoner has no protected liberty interest in a particular job assignment.'"  *Bussey v. Phillips*, 419 F. Supp.2d 569, 579

(S.D.N.Y. 2006), *quoting Frazier v. Couglin*, 81 F.3d 313, 318 (2d Cir. 1996).  Thus, to

the extent that Anthony Amaker is complaining that Mr. Whiteford refused to place him

in the Inmate Program Associate Program following his release from SHU, it is

recommended that this claim be dismissed with prejudice.  In addition, it is

recommended that Anthony Amaker's allegations of discrimination in program

placement based upon dislike of certain religious denominations be dismissed as

conclusory.


### Denial of Call Outs

Sometime after January of 2006, following Anthony Amaker's request to

the US Department of Health for an investigation into plaintiff's claim that the New York

State Department of Correctional Services ("DOCS"), was violating Health Insurance

Portability and Accountability Act ("HIPAA"), regulations regarding charges for copies of

medical records, CO Judasz, CO Schuck, CO Hays and CO Christensen refused to

open his cell door for Nation of Islam services on Tuesday nights.  Dkt. #29, ¶ 19.  In

response to the motion to dismiss, Anthony Amaker declares that CO Christensen,

along with the other defendants, "deprived the plaintiff of attending services of the

Nation of Islam because of the plaintiff wearing dreadlocks."  Dkt. #76, ¶ 1.


To the extent that Anthony Amaker is claiming that he was denied call

outs in retaliation for his complaint to the US Department of Health, it is recommended

that the claim be dismissed for failure to plausibly allege a causal connection between

the protected activity and the adverse action.  *See Davis*, 320 F.3d at 352.  To the

extent that plaintiff alleges that the denial of call-outs was in retaliation for plaintiff's refusal to abide by DOCS' grooming policy, the Court notes that Anthony Amaker resolved a lawsuit claiming that beginning in February of 2006, corrections officers at Attica deprived him of his right to free exercise of his religious beliefs by, *inter alia*, denying his participation in Nation of Islam services and celebrations because of his dreadlocks by Stipulation and Order of Settlement.  No. 06-CV-490 at Dkt. #374. Accordingly, it is recommended that the claims against CO Judasz, CO Schuck, CO Hays and CO Christensen be dismissed.

### Deprivation of Food

Anthony Amaker alleges that between October 20, 2005 and September of 2006, Superintendent James encouraged corrections officers to harass plaintiff and prevent him from coming out of his cell for lunch and dinner. Dkt. #29, ¶ 27.  Anthony Amaker alleges that he was subjected to "serious denial of food."  Dkt. #29, ¶ 35.

The Eighth Amendment prohibition against cruel and unusual punishment requires that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.  *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983).  In the instant case, however, plaintiff does not allege that he was denied nutritionally adequate food by Superintendent James, but that Superintendent James encouraged other officers to harass plaintiff so as to prevent him from leaving his cell. The Court finds this allegation insufficient to state an Eighth Amendment claim against Superintendent James.

**Access to the Law Library**

Anthony Amaker alleges that Superintendent Dolce has allowed the law library officer to limit his access to the law library to research his claims of religious discrimination and has discriminated against members of the Nation of Islam. Dkt. #29, ¶ 27.  Anthony Amaker alleges that he has been prevented from meeting court deadlines, alerting the New York State Court of Appeals of case law in a timely fashion and seeking leave to reargue a matter.  Dkt. #29, ¶ 27.

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Lewis v. Casey*, 518 U.S. 343, 346 (1996), *quoting Bounds v. Smith,* 430 U.S. 817, 828 (1977).  Because prison law libraries are "only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts," allegations of denial of access to the prison law library are insufficient to state a claim; plaintiff must also allege that such a denial caused actual injury, such as the dismissal of an otherwise meritorious claim.  *Id.* at 349-351; *See Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995) (prejudice is an essential element of a claim of denial of access to the court).  "A delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Id.*  As Anthony Amaker's allegations fail to demonstrate actual injury, it is recommended that Superintendent Dolce be dismissed from this lawsuit.

**Handcuff Key**

It is alleged that on April 16, 2006, in retaliation against Grace Amaker's exercise of first amendment rights seeking to ensure that Anthony Amaker was not abused and assaulted and subjected to religious discrimination, CO Hardin placed a fake handcuff key in Grace Amaker's change purse as she went through the metal detector at the Clinton Correctional Facility ("Clinton"), while attempting to visit Anthony Amaker, who had been transferred to Clinton for a court appearance which had been cancelled. Dkt. #29, ¶¶ 21-22. Grace Amaker was acquitted of the charges relating to this incident. Dkt. #29, ¶ 22.

Neither the original complaint (Dkt. #7-2), nor the amended complaint (Dkt. #29), list CO Hardin as a defendant in the caption and he was not served with process. In any event, Grace Amaker fails to plausibly allege any facts to suggest why her complaints on Anthony Amaker's behalf of religious discrimination at Attica would have prompted CO Harden to plant a handcuff key in her change purse as she was attempting to visit him at Clinton following his recent transfer to that facility for a court appearance. Moreover, as Grace Amaker alleges that she was acquitted of the charges, she does not appear to have set forth a claim of denial of due process.

**Denial of Visitation**

Grace Amaker alleges that although she was acquitted of the charges brought against her, Attica Superintendent Conway denied her visitation with Anthony Amaker and Deputy Commissioner Annucci upheld that determination on appeal. Dkt.

#29, ¶ 22.  Grace Amaker's visitation privileges were supposed to have been restored in 2007, but she was denied visitation with Anthony Amaker on September 18, 2009. Dkt. #29, ¶ 22.

Neither the original complaint (Dkt. #7-2), nor the amended complaint (Dkt. #29), list Deputy Commissioner Annucci as a defendant in the caption and he was not served with process.  In any event, "[i]t is well-settled law that inmates do not enjoy an absolute right to visitation."  *Block v. Rutherford*, 468 U.S. 576, 589 (1984).  As the Supreme Court has opined, "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner" and "freedom of association is among the rights least compatible with incarceration."  *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).  Thus,  "[t]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence . . . and therefore is not independently protected by the Due Process Clause."  *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461 (1989).  Furthermore, New York has not created a protected liberty interest in visitation.  *Caldwell v. Goord*, No. 09-CV-945, 2013 WL 1289410, at * 4 (W.D.N.Y. Mar. 27, 2013).  In addition, withdrawal of visitation privileges for a limited period of time does not implicate an inmate's Eighth Amendment rights.  *Overton*, 539 U.S. at 137.  As a result, it is recommended that the denial of visitation claim be dismissed against Superintendent Conway and Deputy Commissioner Annucci.

**Expungement of Inaccurate Information**

Anthony Amaker argues that Program Committee Chair Whiteford has communicated the handcuff key incident, as well as plaintiff's juvenile offender record, to another Corrections Counselor, and that this information has prevented his transfer to a medium security prison and increased his public risk score, which will affect his eligibility for parole.  Dkt. #29, ¶ 28.

"A prisoner has a limited constitutional right to have incorrect information expunged from his record."  *Farinaro v. Coughlin*, 642 F. Supp. 276, 281-82 (S.D.N.Y. 1986), *citing Paine v. Baker*, 595 F.2d 197, 201-02 (4th Cir. 1979) (claim of constitutional magnitude recognized where inmate alleges false information is relied upon to deprive inmate of parole or other recognized liberty interest).  Accordingly, it is recommended that this claim proceed to discovery.

**Cost of Telephone Calls**

Booker Amaker, who is elderly and lives out of state and is unable to travel to New York, complains that Commissioner Goord and Deputy Commissioner LeClaire permit exorbitant telephone fees for family members seeking contact with incarcerated relatives.  Dkt. #29, ¶¶ 20 & 28.  Grace Amaker also challenges the exorbitant fees charged for telephone calls to Anthony Amaker, claiming that they deny her the ability to communicate with him by telephone.  Dkt. #29, ¶¶ 20 & 28.  As a result of the expense of telephone calls and the denial of mail to plaintiff, Grace Amaker, who suffers from carpal tunnel syndrome, diabetes and numerous other ailments, asserts

that she has been forced to travel to ensure the safety of Anthony Amaker.  Dkt. #29,
¶ 28.

Claims that communication with loved ones and counsel is hindered by
the quality and expense of the telephone system available to inmates "do not invoke
constitutional protection."  *Brooks v. Securustech.net*, No. 13-CV-4646, 2014 WL
737683, at *4 (E.D.N.Y. Feb. 24, 2014) (collecting cases).  Accordingly,  it is
recommended that Grace and Booker Amaker's allegations pertaining to the cost of
telephone calls to Anthony Amaker be dismissed.

### Eleventh Amendment immunity

Defendants argue that the Eleventh Amendment divests the Court of
jurisdiction over plaintiffs' official capacity claims seeking monetary damages. Dkt. #32,
p.11.

"The Eleventh Amendment to the Constitution bars suits against a state in
federal court unless that state has consented to the litigation or Congress has
permissibly enacted legislation specifically overriding the state's immunity."  *Russell v.
Dunston*, 896 F.2d 664, 667 (2d Cir.) (citations omitted), *cert. denied*, 498 U.S. (1990).
"It is well-established that New York State has not consented to § 1983 suits in federal
court and that § 1983 was not intended to override a state's sovereign immunity."
*Mamot v. Board of Regents,* 367 Fed. Appx.191 (2d Cir. 2010), *citing Trotman v.
Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-49 (2d Cir. 1977) *and Quern v.*

*Jordan*, 440 U.S. 332, 342 (1979).  "The immunity recognized by the Eleventh

Amendment extends beyond the states themselves to state agents and state

instrumentalities that are, effectively, arms of a state."  *Woods v. Roundout Valley*

*Central School Dist. Bd of Educ.,* 466 F.3d 232, 236 (2d Cir. 2006).  Thus, the Eleventh

Amendment also "bars claims for money damages against state officials acting in their

official capacities."  *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985).


          In accordance with the *Ex Parte Young* doctrine, suits against state

officials in their official capacities are permitted for prospective injunctive relief to stop

ongoing violations of federal law.  *Mary Jo C. v. New York State & Local Ret.Sys*., 707

F.3d 144, 166 (2d Cir. 2013).  However, "an inmate's transfer from a prison facility

generally moots claims for declaratory and injunctive relief against officials of that

facility."  *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006); *Keitt v. New York City*,

882 F. Supp.2d 412, 449 (S.D.N.Y. 2011) (conjecture that plaintiff could be returned to

Attica in the future is insufficient to sustain claim for injunctive relief).  As plaintiff is not

currently housed in any of the facilities at issue in this complaint, it is recommended that

his claims for injunctive relief be dismissed except to the extent that plaintiff seeks a

declaration that DOCS' regulations limiting the exchange of legal work product and

photocopied legal documents is unconstitutional.


RLUIPA

          Defendants argue that Anthony Amaker is not entitled to monetary

damages under RLUIPA for his claim that defendants censored his religious mail.  Dkt.

#41-1, p.11.  Defendants further argue that injunctive relief is moot because Anthony

Amaker is no longer housed at the facilities where the violations were alleged to have

occurred.[2]  Dkt. #41-1, p.11.

Anthony Amaker responds that his claim for injunctive relief is not moot

because the regulation preventing delivery of religious materials applies throughout the

correctional system.  Dkt. #73, p.6.  Anthony Amaker complains that Ms. Amaker is now

forced to write out entire articles in order to send them to him through the mail.  Dkt.

#73, p.5.

RLUIPA proscribes the government from imposing a substantial burden

on the religious exercise of an inmate, even if the burden is the result of a rule of

general applicability, unless the government demonstrates that the imposition of the

burden on that inmate is in furtherance of a compelling governmental interest and is the

least restrictive means of furthering that compelling interest.  42 U.S.C. § 2000cc-1(a).

"[A] substantial burden on religious exercise exists when an individual is required to

'choose between following the precepts of her religion and forfeiting benefits, on the

one hand, and abandoning one of the precepts of her religion . . . on the other hand.'"

*Smith v. Goord*, 541 Fed. App'x 133, 134 (2d Cir. 2013), *quoting Westchester Day Sch.*

*v. Vill. of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007); *See Lovelace v. Lee*, 472

F.3d 174, 187 (4th Cir. 2006) (substantial burden is one that puts substantial pressure

on an adherent to modify his behavior and violate his beliefs).

---

[2] Anthony Amaker is currently incarcerated at the Fishkill Correctional Facility.

RLUIPA "does not authorize monetary damages against state officers in their official capacities and does not create a private right of action against state officers in their individual capacities." *Washington v. Gonyea*, 731 F.3d 143, 144 (2d Cir. 2013) (internal citation omitted). Although RLUIPA would permit injunctive or declaratory relief, plaintiff is no longer housed at Southport or Attica, rendering his complaints of denial of meals to break the fast during Ramadan and denial of call outs to attend Nation of Islam services moot. *Salhuddin*, 467 F.3d at 272 ("inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief.").

Injunctive and declaratory relief is available against defendants in their official capacities where statewide policy is challenged. *Smith v. Artus*, 522 Fed. App'x 82 (2013). In the instant case, however, Anthony Amaker does not allege that the regulations limiting the number of printed or photocopied pages which can be included in incoming correspondence substantially burden his ability to follow the Nation of Islam. Accordingly, it is recommended that the RLUIPA claims be dismissed.

## CONCLUSION

For the reasons set forth above, it is recommended that defendants' motions to dismiss (Dkt. #41, 58 & 68), be granted except with respect to Anthony, Phyllis and Grace Amaker's challenge to the constitutionality of DOCS' regulation of incoming correspondence and except with respect to the following claims by Anthony Amaker against the following defendants in their individual capacities:

(1)    Superintendent Green and Ms. Washburn interfered with Anthony Amaker's incoming mail;

(2)    Superintendent Greene denied Anthony Amaker equal protection by restricting access to a Labor Department certification program to white inmates;

(3)    CO Rando, CO Huffer, CO Vaugh and Sergeant Hendry subjected Anthony Amaker to excessive force on October 6, 2004;

(4)    CHO Harvey denied Anthony Amaker due process during the course of the disciplinary hearing regarding the incident of October 6, 2004;

(5)    Director Selsky affirmed the disposition of the disciplinary hearing regarding the incident of October 6, 2004;

(6)    Nurse Brandt denied Anthony Amaker adequate medical care following the incident of October 6, 2004;

(7)    CO Gilbert, CO Ayers and CO Pierson subjected Anthony Amaker to excessive force on November 13, 2004;

(8)    Superintendent Greene blocked delivery of photocopies of legal documents sent to Anthony Amaker by Grace Amaker;

(9)    Ms. Washburn denied delivery of Jehovah's Witnesses' magazines and legal documents and legal work product by mail between Anthony Amaker and Phyllis and Grace Amaker; and

(10)    Ms. Bartlett and Ms. McNamara denied Anthony Amaker's request to mail legal documents by certified mail, return receipt requested as required to obtain jurisdiction over New York State in the Court of Claims;

It is further recommended that Commissioner Glenn S. Goord; Lucien J. LeClaire; Superintendent J. Conway; Superintendent McGinnis; Deputy Superintendent Chappius; CO Rogoza; B. Harder; Sgt. Gavigan; Mr. Zimmerman; Deputy Superintendent James; Deputy Superintendent McNamara; CO Paribella; CO Seymore; CO Dhier; CO Judaz; CO Shuck;  CO Hays; J. Mootz; Deputy Superintendent Dolce; CO Harder; CO Christensen and L.N. Wright be dismissed from this lawsuit.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474

U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

SO ORDERED.

DATED:    Buffalo, New York
         June 27, 2016

                        *s/ H. Kenneth Schroeder, Jr.*
                        H. KENNETH SCHROEDER, JR.
                        United States Magistrate Judge