UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANTHONY AMAKER, *et al.*,,

    Plaintiffs,

  v.                                                         09-CV-396
                                                         DECISION AND ORDER

COMM. G. S. GOORD, *et al.*,

    Defendants.

---

On July 3, 2007, the *pro se* plaintiffs commenced this action in the Southern District of New York under 42 U.S.C. § 1983, and it later was transferred to the Western District of New York. Docket Items 7-1 and 7-2. On May 6, 2010, United States District Judge Richard J. Arcara referred the case to United States Magistrate Judge H. Kenneth Schroeder, Jr., for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B). Docket Item 23. After the plaintiffs were granted several extensions of time to amend their complaint, *see* Docket Items 22, 26, and 28; *see also* Docket Item 31, they filed an amended complaint on February 17, 2011. Docket Item 29.

On July 20, 2012, most defendants moved to dismiss or, in the alternative, for a more definite statement. Docket Item 41. Not all defendants had yet been served, however, *see* Docket Item 49, and so, on October 30, 2012, defendants W. Huffer, John Schuck, and Lester Wright[1] moved to dismiss. Docket Item 58. On January 10, 2013, defendant R. Chistensen moved to dismiss. Docket Item 68. On February 21, 2013,

---

[1] Some defendants were named in the complaints by their full name; others by initial and last name. This decision and order will refer to the defendants as they were named in the complaints.

plaintiff Anthony D. Amaker[2] responded to the defendants' motions, Docket Items 72 and 73, and on February 28, 2013, the defendants replied, Docket Item 74.

On March 7, 2016, the case was reassigned to the undersigned from Judge Arcara. Docket Item 78. On June 27, 2016, Judge Schroeder issued a Report and Recommendation ("R&R"), finding that the defendants' motions should be granted in part and denied in part. Docket Item 79. On September 15, 2016, Amaker objected to the R&R. Docket Item 84.[3] On November 4, 2016, the defendants responded to the objections. Docket Item 88. On November 28, 2016, Amaker replied. Docket Item 89.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a de novo review of those portions of a magistrate judge's recommendation to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). This Court therefore has carefully reviewed the thorough R&R, the record in this case, the objection and response, and the pleadings. Based on that de novo review, the Court accepts some of Judge Schroeder's recommendations but respectfully does not adopt others, as addressed below.

---

[2] All the plaintiffs in this case have the last name "Amaker." See Docket Item 29 at 21. Because the facts in the complaint make it clear that plaintiff Anthony D. Amaker is the principal plaintiff, this order will refer to him as "Amaker" and will refer to other plaintiffs by their first and last names.

[3] Although this case includes a number of plaintiffs, only plaintiff Amaker objected to the R&R. See Docket Item 84 at 1, 9. Having reviewed his objections, this Court concludes that each of his objections involves some interest that is personal to him. But Amaker is forewarned that "because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). If, in any future submission, Amaker attempts to litigate an interest that is *not* personal to him, his submission will not be considered. *See id.*

## DISCUSSION[4]

When considering a motion to dismiss, the court accepts "the factual allegations in the complaint as true and draw[s] all reasonable inferences in the plaintiffs' favor." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018). Therefore, the facts that follow, summarized in connection with the discussion of each specific objections, are taken from a liberal reading of the amended complaint.

I.  **PRISON OFFICIALS' OBLIGATION TO ASSIST INMATES IN DEFENDING CHARGES OF PRISON DISCIPLINARY RULE VIOLATIONS**

After prison officials issued Amaker a misbehavior report, they provided him with a hearing on the report's allegations. Docket Item 29 at 5. "Supt. Greene assigned CHO Harvey to conduct a hearing, and B. Harder was picked to provide assistance while the plaintiff was confined in [the Special Housing Unit ("SHU")]."[5] *Id.* Harder "was

---

[4] The defendants argue that Amaker has waived review of much or all of the R&R by failing to comply with United States District Court for the Western District of New York Local Rule 72(b), which requires objections to an R&R by a magistrate judge to "specifically identify the portions of the proposed findings and recommendations to which objection is made." Docket Item 88 at 2-3. But a "local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply," Fed. R. Civ. P. 83(a)(2), and "a court should be particularly solicitous of *pro se* litigants who assert civil rights claims" as well as "litigants who are incarcerated." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). The Court therefore excuses any noncompliance with Local Rule 72(b).

[5] Under the "normal conditions of SHU confinement in New York," a prisoner is "placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day . . . , limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling." *Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000). "Visitors [are] permitted, but the frequency and duration [are] less than in general population." *Id.* "The number of books allowed in the cell [is] also limited." *Id.*

requested to get the misbehavior report of the other inmate who attacked plaintiff and interview CO W. Rogoza," but she "failed to provide this essential assistance." *Id*. "In direct contradiction she did not obtain any documents on behalf of the plaintiff." *Id*. at 5-6.

Judge Schroeder construed the amended complaint to allege that defendant *Corrections Officer* Harder was assigned to provide Amaker assistance in preparing for the disciplinary hearing but failed to do so. Docket Item 79 at 12. He noted that New York regulations call for inmates to be provided with assistance in preparing for disciplinary hearings. *Id*. at 13. But he determined that those regulations do not create a federally-protected due process right, and he therefore concluded that the claim against Harder should be dismissed. *Id*.

In his objections, Amaker argues that Judge Schroeder erred in reading the complaint: Judge Schroeder referred to CO Harder, but the complaint refers to "Ms. B. Harder school teacher assigned as an assistant for the preparation for discipline charges while the plaintiff was confined in SHU." Docket Item 84 at 1. That alleged error is of no moment.

But Amaker also objects because "[t]he Second Circuit has held that prison officials have a constitutional obligation to provide substantive assistance to an inmate in marshaling evidence and presenting a defense." *Id*. (quoting *Diaz v. Burns*, 2015 WL 5167181, at *8 (W.D.N.Y. Sept. 3, 2015)). This Court agrees, and the complaint therefore states a claim against defendant B. Harder for failure to provide the requested assistance.

4

"Prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." *Eng. v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988). "When the inmate is disabled, either by being confined full-time to SHU or transferred from the prison in which the incidents occurred, the duty of assistance is greater because the inmate's ability to help himself is reduced." *Id.* "[F]or inmates disabled by confinement in SHU, or transferred to another facility, the right to substantive assistance is an obligation imposed by the Due Process Clause of the Fourteenth Amendment." *Id.* at 898. Without limiting "the contours of the assistant's obligations, such help certainly should include gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses." *Id.* "At a minimum, the assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself." *Id.* "[A]n assigned assistant who does nothing to assist a disabled prisoner—one who is segregated from the general prison population—has failed to accord the prisoner his limited constitutional due process right of assistance" and breaches her duty to assist the prisoner. *Id.*[6]

---

[6]Amaker's due process claim may proceed only if a liberty interest was infringed as a result of the denial of due process at the hearing. *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). "A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Second Circuit has established "the following guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed." *Id.* "Where the plaintiff was confined for an intermediate duration—between 101 and 305 days—'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Id.* at 64-65 (quoting *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000)). But a "confinement longer than an intermediate one, and under 'normal SHU conditions,' is a 'sufficient departure from the ordinary incidents of prison life to require procedural due process

Here, according to the amended complaint, defendant B. Harder was assigned to provide Amaker with assistance in connection with his disciplinary hearing. Amaker was confined to the SHU and therefore could not fend for himself. Docket Item 29 at 5. But B. Harder allegedly failed to "get the misbehavior report of the other inmate who attacked plaintiff," and she failed to "interview [CO] W. Rogoza" as well. *Id.* Indeed, "she did not obtain *any* documents on behalf of the plaintiff." *Id.* at 5-6 (emphasis added).

Those facts create a reasonable inference that defendant B. Harder breached her constitutional duty to assist Amaker in even the most basic ways, *see Eng*, 858 F.2d at 898, and the plaintiffs' claim against her survives the defendants' motion to dismiss.

## II. DENIAL OF RELIGIOUS MEALS

After his release from SHU, Amaker was denied religious meals. Docket Item 29 at 6. More specifically, while he was confined at the Attica Correctional Facility, Amaker was denied food on three occasions during the month of Ramadan. *Id.* at 6-7. Upon being transferred from Great Meadow Correctional Facility to Southport Correctional Facility, he again was denied meals during three days of Ramadan. *Id.* at 7. And when he was transferred from Southport back to Attica, he was denied meals for eight days during Ramadan. *Id.*

---

protections.'" *Id.* at 65 (quoting *Colon*, 215 F.3d at 231). Here, the plaintiffs allege that Amaker served a total of 379 days of SHU. Docket Item 29 at 6. If all that time resulted from this disciplinary hearing, then Amaker was entitled to hearing procedures that conform to the requirements of due process, including those set forth in *Eng*. If not, then the defendants may raise the liberty-interest issue in a motion for summary judgment.

6

Judge Schroeder recommended dismissal of Amaker's claim based on this conduct because "isolated incidents involving the denial of religiously mandated food are insufficient to support a First Amendment claim." Docket Item 79 at 16. Amaker objects, contending that the defendants' conduct in denying him these meals indeed states a First Amendment claim. Docket Item 84 at 2-3.

The amended complaint is entirely devoid of any allegations of any defendant's personal involvement in denying Amaker his religious meals. See Docket Item 29 at 6-7. "Having failed to allege, as [the plaintiffs] must, that these defendants were directly and personally responsible for the purported unlawful conduct, their complaint is 'fatally defective' on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (quoting *Black v. United States*, 534 F.2d 524, 527-28 (2d Cir. 1976)). For this reason, this Court agrees with Judge Schroeder, and the free exercise claim for the denial of Amaker's religious meals is dismissed.[7]

### III. INTERFERENCE WITH GRIEVANCES CLAIM AGAINST MCGINNIS, BARTLETT, AND MCNAMARA

"During the months of July through October 17, 2005, McGinnis, Bartlett and McNamara were allowing [the Inmate Grievance Resolution Committee ("IGRC")] supervisor to interfer[e] with the grievance proceeding and not file plaintiff's grievance."

---

[7] Typically, "'the court should not dismiss without granting leave to amend [a pro se complaint] at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). Here, however, when Judge Arcara screened the initial complaint, the plaintiffs already were given such leave and were instructed to allege in any amended complaint "as to each defendant . . . how he or she was personally involved in the alleged constitutional violation." Docket Item 17 at 11.

Docket Item 29 at 9. "Ms. Bartlett and Ms. McNamara intentionally denied the plaintiff certified return receipt mailing to the N.Y.S. Attorney General Office to gain jurisdiction against the state in the Court of Claim." *Id*. This injured Amaker when his claim was dismissed and "rejected for failure to properly serve the Defendants." *Id*. at 14.

Judge Schroeder recommended that the plaintiffs' claim against Bartlett and McNamara not be dismissed and proceed as a claim of denial of access to the courts. Docket Item 79 at 22-23. But Judge Schroeder recommended that the claim against McGinnis, Barlett, and McNamara for allowing the IGRC supervisor to interfere with Amaker's ability to file grievances be dismissed. He based that recommendation on his conclusion that "inmate grievance programs created by state law are not required by the Constitution, and consequently allegations that prison officials violated those procedures do not give rise to a colorable Section 1983 claim." Docket Item 79 at 23 (quoting *Alvarao v. Westchester Cty*, 22 F. Supp. 3d 208, 214 (S.D.N.Y. 2014)).

In his objections, Amaker challenges Judge Schroeder's legal conclusion and contends that, at least to some extent, inmate grievance programs are constitutionally required, citing cases involving First Amendment retaliation claims. Docket Item 84 at 5 (quoting, *e.g.*, *Johnson v. Burges*, 506 F. App'x 10, 12 (2d Cir. 2012)). But even if Amaker were correct, the amended complaint alleges only that McGinnis, Bartlett, and McNamara somehow "allow[ed]" an unidentified IGRC supervisor to interfere with his claims. It does not suggest what that means or how they could "allow" this, nor does Amaker explain any of that in his objections. The conduct that the complaint addresses is that of the unidentified IGRC supervisor—not McGinnis, Bartlett, or McNamara. Therefore, this Court accepts and adopts Judge Schroeder's recommendation to

8

dismiss the claim that these three defendants allowed the IGRC supervisor to interfere with Amaker's grievances. Docket Item 79 at 23.

## IV.  DENIAL OF VISITATION

The amended complaint alleges that defendants Attica Correctional Facility Superintendent James Conway and Department of Corrections and Community Supervision Acting Commissioner Anthony J. Annucci[8] denied Amaker the right to visit with Grace Amaker for "entire years" in retaliation for complaints regarding his treatment and the conditions of his confinement. Docket Item 29 at 12-13. The R&R characterized that claim as asserting an absolute right to visitation and recommended dismissing it because there is no such right. Docket Item 79 at 29. Amaker's objections argue that these claims "should proceed as clear violations against discrimination and retaliation." Docket Item 5-6.

"It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right." *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001). "Ordinarily a plaintiff can survive a motion to dismiss based on the pleadings so long as he has alleged facts, that if proven, would support a cause of action." *Id.* "However, because of the 'ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with skepticism and particular care.'" *Id.* (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d

---

[8] Judge Schroeder observed that the amended complaint does not list Deputy Commissioner Annucci (now Acting Commissioner Annucci) as a defendant in the caption and that Annucci was not served with process. Docket Item 79 at 29. That issue is addressed later in this order.

9

Cir. 1995)). "Because of the potential for abuse, '[courts] insist[] on a higher level of detail in the pleadings.'" *Id.* (quoting *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987)).

In the Second Circuit,

> prisoner retaliation claims [fall] into three categories: (1) "a retaliation claim supported by specific and detailed factual allegations which amount to a persuasive case ought usually to be pursued with full discovery;" (2) "a complaint which alleges facts giving rise to a colorable suspicion of retaliation[;] .... [s]uch a claim will support at least documentary discovery;" (3) "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone[;] .... [i]n such a case, the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants."

*Id.* (quoting *Flaherty v Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). Liberally construed, the amended complaint alleges that the defendants decided to deny Amaker's visitation rights at about the same time that he raised certain complaints about his conditions of confinement. Docket Item 29 at 13. Therefore, this Court believes that the denial-of-visitation-rights retaliation claim falls into the second category: it "alleges facts giving rise to a colorable suspicion of retaliation" supporting "at least documentary discovery." *Johnson*, 8 F. App'x at 144. For that reason, this claim survives the defendants' motion to dismiss.

## V.    HANDCUFF KEY

Grace Amaker assisted Amaker in filing complaints against the Commissioner and the Deputy Commissioner while Amaker was incarcerated. Docket Item 29 at 11-12. At about the time when the United States Department of Health and Human Services was investigating Amaker's complaints about the defendants—and when Grace Amaker was complaining to defendant Goord about illegal religious discrimination at Attica—defendant CO Hardin "place[ed] a fake handcuff key in her

10

change purse while clearing the metal detector at Clinton C.F." Docket Item 29 at 12. As a result, Amaker's ability to visit with Grace Amaker was curtailed. *See id*.

Judge Schroeder recommended dismissing this claim. Docket Item 79 at 28. He found that "Grace Amaker fails to plausibly allege any facts to suggest why her complaints on Anthony Amaker's behalf of religious discrimination at Attica would have prompted CO Harden to plant a handcuff key in her change purse as she was attempting to visit him at Clinton following his recent transfer to that facility for a court appearance." *Id*. at 28.

Amaker objects, contending that "[t]here is a genuine issue[] of material fact[] as to whether [CO] Harden and other[s] maliciously set the plaintiff [presumably Grace Amaker] up on false criminal charges." Docket Item 84 at 7.[9] And he contends that, contrary to Judge Schroeder's findings, Hardin and other prison officials coordinated with one another despite their location at different facilities. *Id*. at 6.

Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corop. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)), when evaluating the complaint, a court must assume "that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. "Rule 12(b)(6) does not

---

[9] The amended complaint also alleges that although Grace Amaker was acquitted of the charges related to this incident, it "cost her excessive money for defending herself and traveling for court." Docket Item 29 at 12. Any claim to recover the costs Grace Amaker incurred for defending criminal charges resulting from the handcuff-key incident is personal to Grace Amaker, and Amaker therefore cannot litigate it. *See* note 2, *supra*. Because the handcuff-key claim also involves an interest personal to Amaker, however—that his ability to visit with Grace Amaker was curtailed—he may address this issue on his own behalf and object to Judge Schroeder's recommendation to dismiss that claim.

11

countenance dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

In contrast to wholly conclusory allegations, the allegations here are quite specific: that Hardin placed a fake key in Grace Amaker's purse. *See* Docket Item 29 at 12. Although the retaliatory allegations are somewhat less detailed, the plaintiffs provide some detail regarding the event's timeframe, alleging that it occurred at about the time when Amaker was involved in a number of complaints and investigations regarding the prison. For that reason, this First Amendment retaliation claim falls into the second category of prisoner retaliation claims, *see supra* at 9—it "alleges facts giving rise to a colorable suspicion of retaliation" supporting "at least documentary discovery," *Johnson*, 8 F. App'x at 144. The claim therefore survives the defendants' motion to dismiss.[10]

## VI. DEPRIVATION OF FOOD

Between October 20, 2005, and September 2006, defendant Randy James, Deputy Superintendent at Attica Correctional Facility, encouraged corrections officers to harass Amaker and prevent him from coming out of his cell for lunch and dinner. Docket Item 29 at 15. Judge Schroeder recommended that this claim be dismissed. Docket Item 79 at 26. According to the R&R, the Eighth Amendment entitles prisoners to nutritionally adequate food, but the amended complaint does not allege that James denied Amaker adequate food; instead, it alleges that James "encouraged other officers

---

[10] Judge Schroeder observed that the amended complaint does not list CO Hardin as a defendant in the caption and that he was not served with process. Docket Item 79 at 28. This matter is addressed later in this order.

12

to harass plaintiff so as to prevent him from leaving his cell." *Id.* (citing Docket Item 29 at 15). Judge Schroeder therefore found this conduct insufficient to state a claim under the Eighth Amendment. *Id.* In his objections, Amaker argues that this was another action taken in retaliation for filing grievances. Docket Item 84 at 7. Alternatively, he argues that the defendants' "actions violate the contemporary standards of decency." *Id.*

Analyzing this claim as one under the First Amendment for retaliation, this Court believes that, at least as against defendant James, it falls into the third category: it "alleges retaliation in wholly conclusory terms" and therefore "may safely be dismissed on the pleadings alone." *Johnson*, 8 F. App'x at 144. The amended complaint does not allege that James actually took any direct action against Amaker but says only that James "encouraged" others to harass him and includes no other specifics. Furthermore, the amended complaint is far from clear regarding how James is connected to the other officers who, in the same paragraph, for example, are alleged to have limited Amaker's time in the law library. *See* Docket Item 29 at 14-15. Therefore, the First Amendment retaliation claim against James for encouraging officers to harass Amaker is dismissed.

Amaker's alternative argument is simply a disagreement with Judge Schroeder over the application of Eighth Amendment jurisprudence to the alleged facts. *See* Docket Item 84 at 7. For the reasons stated by Judge Schroeder in his R&R, this Court reject's Amaker's alternative argument and agrees with Judge Schroeder that the allegations are insufficient to state an Eighth Amendment claim.

## VII. RETALIATION ON THE PART OF DEFENDANT ZIMMERMAN

In his objections, Amaker argues that the R&R did not address the plaintiffs' retaliation claims against defendant Zimmerman involving threats made by Zimmerman and Sergeant Gavigan. Docket Item 84 at 4. The R&R indeed addresses the threats made by "Sgt. Gavigan and CO Zimmerman." Docket Item 79 at 19-20. But Amaker contends that "[i]t is not [CO] Zimmerman, but Mr. Zimmerman who was involved in the threats with the Sergeant Gavigan." Docket Item 84 at 4.

Regardless of whether the particular defendant at issue is "Mr. Zimmerman" or "CO Zimmerman," Judge Schroeder addressed the underlying conduct of the person identified as Zimmerman in the amended complaint. *See* Docket Item 29 at 10. For the reasons stated in the R&R, this Court accepts Judge Schroeder's recommendation and dismisses this claim.

## VIII. CARRYING PROPERTY WHILE IN MECHANICAL RESTRAINTS

In February 2005, Southport Superintendent McGinnis and Deputy Superintendent Chappius "had" CO Dhier, CO Seymore, and CO Parribelli make Amaker "carry 6 dra[ft] bags of legal and personal property up the stairs while in full restraint of handcuff and waist chain." Docket Item 29 at 13. This was done even though "the facility staff knew [Amaker] suffered from herniated discs in the lower back." *Id*. This caused Amaker to "hurt himself and cause[d] damage" to his "left arm nerves." *Id*. The pain lasted over six years and he has tested "positive [for] nerve damage from the left shoulder to the hand." *Id*. The prison provided no treatment for Amaker's nerve

14

damage after those medical findings.[11]  *Id.*  After Amaker moved his "legal property into his cell, these same officers would dump his legal work product all over the bed and floor."  *Id.*

The R&R analyzed this claim as an Eighth Amendment deliberate-indifference-to-medical-needs claim.  Docket Item 79 at 20.  Judge Schroeder concluded that "[a]s an objective matter . . . requiring an inmate encumbered by mechanical restraints to carry his personal property between cells fails to approach the level of a constitutional violation."  *Id.* at 21.  Therefore, the R&R recommended that the Eighth Amendment claim against CO Dhier, CO Symore, CO Parrabella, Superintendent McGinnis and Deputy Superintendent Chappius be dismissed.  *Id.* at 22.

Amaker objects, arguing primarily that he "should not have to wait until he damaged his nerves in the fall before obtaining an injunction against the use of handcuff[s] to transport[] property through the facility in Southport C.F."  Docket Item 84 at 9.  But Amaker is no longer housed in the Southport Correctional Facility, *see* Docket Item 90, so any request for an injunction is is moot.  *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from one prison facility generally moots claims for declaratory and injunctive relief against officials of that

---

[11] If true, the claim that the prison provided no treatment for Amaker's nerve damage may raise Eighth Amendment concerns.  But the claim still would fail for the same reason that the denial-of-his-religious-meals claim fails.  *See supra* at 6-7.  The plaintiffs' amended complaint is entirely devoid of any allegations of any defendant's personal involvement in denying Amaker nerve-damage treatment.  See Docket Item 29 at 13.  "Having failed to allege, as they must, that these defendants were directly and personally responsible for the purported unlawful conduct, their complaint is 'fatally defective' on its face."  *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (quoting *Black v. United States*, 534 F.2d 524, 527-28 (2d Cir. 1976)).  For this reason, any Eighth Amendment claim raised by the allegations that Amaker was not provided with treatment for his nerve damage is dismissed.

15

facility."); *Pugh v. Goord*, 571 F. Supp. 2d 477, 490 (S.D.N.Y. 2008). And insofar as Amaker seeks damages, this Court agrees with Judge Schroeder that having an inmate carry his belongings while restrained, on the facts alleged, does not state an Eighth Amendment claim.

## IX. DENIAL OF ACCESS TO NATION OF ISLAM CALL OUTS

The amended complaint alleges that since January 2006, Amaker has been targeted by CO Judasz, CO Schuck, CO Hays, and CO Christensen upon going to Nation of Islam Services. Docket Item 29 at 10. They would "not open the plaintiff's cell for [Nation of Islam] call outs of which he was on for service on Tuesdays." *Id.* at 11.

The R&R analyzed this claim as a First Amendment retaliation claim. Docket Item 79 at 25-26. Judge Schroder found that the amended complaint failed to allege a sufficient causal connection between the protected activity—being denied call outs— and either a complaint Amaker filed with the U.S. Department of Health or his refusal to abide by the Department of Correctional Services' grooming policy. *Id.* Therefore, the R&R recommended dismissing this claim against CO Judasz, CO Schuck, CO Hays, and CO Christensen.

Amaker objects, arguing that this claim is not a First Amendment *retaliation* claim but instead a straight free exercise claim. *See* Docket Item 84 at 9. He alleges that the defendants simply would not open the door to his cell and permit him to attend religious services. Docket Item 29 at 10. If true, Amaker's claim certainly is sufficient to make the threshold showing "that the disputed conduct substantially burdens his sincerely

16

held religious beliefs," *Salahuddin*, 467 F.3d at 274-75, [12] regardless of whether it was in retaliation for exercising his right to free speech by filing a complaint or taking some other constitutionally protected action. Therefore, the free exercise claim against these four defendants survives the defendants' motion to dismiss.

X.     DEFENSE OF FAILURE TO EXHAUST ADMINISTRATIVE RESOURCES

Amaker argues that this Court should bar the defendants from asserting a failure-to-exhaust defense "because they are unwilling to provide relief." Docket Item 84 at 3. He bases his request on Judge Schroeder's determination that inmate grievance programs are created by state law and not necessarily required by the Constitution.

Amaker's request makes no sense. The Prison Litigation Reform Act of 1995 "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)). Thus, whether or not grievance programs are required by the Constitution has no bearing on whether or not Amaker exhausted *available* administrative remedies provided at the discretion of New York State.

---

[12] "The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006). "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; 'the burden remains with the prisoner to show that these articulated concerns were irrational.'" *Id.* (quoting *Ford v. McGinnis*, 352 F.3d 582, 595 (2d Cir. 2003)).

17

## XI. RECOMMENDATIONS WITHOUT OBJECTIONS

This Court has reviewed the R&R's other recommendations de novo. Based on that review, the Court accepts and adopts Judge Schroeder's recommendations regarding the plaintiffs' claims that are otherwise unaddressed in this order.

## **MOTION FOR LEAVE TO AMEND**

The R&R also recommended dismissing the complaint against Annucci in part because "neither the original complaint . . . nor the amended complaint . . . list Deputy Commissioner Annucci as a defendant in the caption and he was not served with process." Docket Item 79 at 29. The same is true for CO Hardin. *Id.* at 28. In his objections, Amaker requests leave to amend his complaint "to include Mr. Annucci and all others involved in the intentional deprivation of visitation," including CO Hardin. Docket Item 84 at 6-7.

Federal Rule of Civil Procedure 10(a) provides that "[e]very pleading must have a caption" and that the "title of the complaint must name all parties." But "Rule 10 is, of course, subject to the command 'never to exalt form over substance.'" *Shariff v. United States*, 689 F. App'x 18, 19 (2d Cir. 2017) (summary order) (quoting *Phillips v. Girdich*, 408 F.3d 123, 128 (2d Cir. 2005)). The Second Circuit "excuse[s] technical pleading irregularities as long as they neither undermine the purpose of notice pleading nor prejudice the adverse party." *Id.* (quoting *Phillips*, 408 F.3d at 128).

Here, read fairly and liberally, the amended complaint already raises the claims that Amaker wants to assert against Annucci and Hardin. Docket Item 29 at 12-13. Therefore, the plaintiffs need not be granted leave to amend the amended complaint to add these defendants because the amended complaint already asserts claims against

18

them.[13]  Because those defendants have not yet been served, however, the United States Marshal shall serve CO Hardin and Deputy Commissioner Annucci unless counsel for the other defendants accepts service on their behalf.  And in order to synchronize both form and substance, the Clerk of Court is directed to amend the caption of this action to include Hardin and Anucci as defendants.

On the other hand, Amaker's request to amend the complaint to add "all other[s] involved in the intentional deprivation of visitation," Docket Item 84 at 6-7, is denied.

---

[13] *See Sheridan v. United States*, 214 F. App'x 857, 859 (10th Cir. 2007) (district court erred by construing pro se plaintiff's "complaint strictly according to its caption" instead of looking to body of the complaint); *Trackwell v. U.S. Government*, 472 F.3d 1242, 1243-44 (10th Cir. 2007) ("in a pro se case when the plaintiff names the wrong defendant in the caption or when the identity of the defendants is unclear from the caption, courts may look to the body of the complaint to determine who the intended and proper defendants are"); *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1023 n.4 (11th Cir. 2001) ("The caption is chiefly for the court's administrative convenience."); *Greenwood v. Ross*, 778 F.2d 448, 451-52 (8th Cir. 1985) ("caption [is] not controlling in determining the parties"); *Morales v. Stanton*, 2019 WL 183901, at *3 (M.D. Pa. Jan. 14, 2019) (quoting *Trackwell*, 472 F.3d at 1243-44) ("because *pro se* pleadings are to be construed liberally, courts will often 'look to the body of the complaint to determine who the intended and proper defendants are'"); *Brown v. Peoples Sec. Ins.*, 158 F.R.D. 350, 352 (E.D. Pa. 1994) ("Although [pro se] Plaintiffs failed to name [a defendant] as a party in the caption of the complaint, the caption is usually not considered a part of the pleader's statement of claim and is not determinative as to the parties to the action."); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008)) (reversing dismissal of pro se complaint where district court failed to obey directive that "dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases" and providing that the district court "should have afforded plaintiff wider latitude in pressing her claims"); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (affirming dismissal of complaint for failure to comply with Rule 10(a) because "the district court actually *tried* alternatives before dismissing the case" by "allow[ing the plaintiff time] in which to amend his complaint to bring it into compliance with Rule 10(a)") (emphasis in original); *but see Herzog v. Nebraska*, 2010 WL 1740602, at *1 n.1 (D. Neb. Apr. 28, 2010) (determining that eleven individuals referenced in complaint but not in caption are not defendants because of Rule 10(a)); *Harris v. Auxilium Pharm., Inc.*, 664 F. Supp. 2d 711, 722 (S.D. Tex. 2009) (quoting *Jones v. Parmley*, 2005 WL 928666, at *1 (N.D.N.Y. (Apr. 20, 2005) ("[A] party that is not named in the caption of an amended complaint is not a party to the action.").

That request is simply too vague. Amaker does not provide any information about the identity of any new potential defendants who have not already been identified. Moreover, a motion to amend a complaint may be denied after the "repeated failure to cure deficiencies by amendments previously allowed." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In this case, several years ago, the plaintiffs were given an opportunity to amend the complaint and directed to "allege, **as to each defendant**, supervisory official or not, how he or she was personally involved in the alleged violation." Docket Item 17 at 11 (emphasis in original). Therefore, Amaker's motion for leave to amend the complaint again is denied.

## **CONCLUSION**

For the reasons stated above and in the R&R, the defendants' motions to dismiss, Docket Items 41, 58, and 68, are GRANTED in part and DENIED in part, consistent with the R&R and this order. The Clerk of Court is directed to amend the caption of this action to include Hardin and Annucci as defendants. The case is referred back to Judge Schroeder for further proceedings consistent with Judge Arcara's referral order of May 6, 2010, Docket Item 23.

SO ORDERED.

Dated: March 5, 2019
Buffalo, New York

    *s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

20